UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br><br>            *Plaintiff*,<br><br>     v.<br><br>U.S. CUSTOMS AND BORDER<br>PROTECTION, *et al.*,<br><br>            *Defendants*. | Civil Action No. 20-672 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Doe, proceeding *pro se*, brings this action against the United States and the United States Customs and Border Protection agency ("CBP"), alleging that their refusal to allow him to board a flight from Guam to Honolulu violated his "[r]ight to freedom of movement" and was an unlawful "act of discrimination on the basis of immigration status," Dkt. 16 at 4–5 (Am. Compl.), "and/or nationality," Dkt. 8-1 at 6. Doe asserts (or attempts to assert) claims under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. Defendants, in turn, move to dismiss, arguing that (1) the complaint fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) the Court lacks personal jurisdiction over the CBP officer in Guam who prevented Doe from boarding his flight; and (3) the District of Columbia is not the proper venue for Doe's claims against the CBP officer. *See generally* Dkt. 18-1; *see also* Dkt. 22.

For the reasons that follow, Defendants' motion to dismiss, Dkt. 18, is **GRANTED** in part and **DENIED** in part.

1

# I. BACKGROUND

As it must, the Court accepts Doe's factual allegations as true for purposes of evaluating Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court is further mindful that "*pro se* pleadings should be liberally construed," *Nichols v. Vilsack*, No. 13-cv-1502, 2015 WL 9581799, at *1 (D.D.C. Dec. 30, 2015) (quotation marks omitted), and that Doe must be afforded "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation marks omitted).

## A.  Statutory and Regulatory Background

The Immigration and Nationality Act ("INA") authorizes the Secretary of Homeland Security to parole into the United States certain noncitizens who are neither admissible nor possess any legal basis for entry. 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. § 212.5. The INA makes clear that "parole of such [noncitizen] shall not be regarded as an admission of the [noncitizen]." 8 U.S.C. § 1182(d)(5)(A). Accordingly, when the noncitizen's parole period expires, he "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*; *see also* 8 C.F.R. § 212.5(e). Previously paroled noncitizens—like all noncitizens—are thus prohibited from entering or traveling through the United States unless they possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

In October 2009, the Department of Homeland Security ("DHS") announced that, effective the following month, the agency would begin considering "requests for discretionary parole into the CNMI [Commonwealth of the Northern Mariana Islands] from eligible nationals of Russia." Rescission of Discretionary Parole Policies Relating to Nationals of the Russian

2

Federation Seeking Entry into Guam and/or the Commonwealth of the Northern Mariana Islands for a Temporary Visit for Business or Pleasure, 84 Fed. Reg. 46,029, 46,029 (notice Sept. 3, 2019).  In January 2012, "this policy was extended to Russian visitors to Guam," who were thereafter permitted to enter and travel between Guam and the CNMI visa-free for a period of 45 days.  *Id.* at 46,029–30.[1]  Parole authorization was "limited to Guam and the CNMI only," however, and did "not permit travel to another location within the United States."  *Id.* at 46,030.

On September 3, 2019, DHS announced "that as of October 3, 2019, [it would] rescind[] its policy relating to the exercise of its discretionary parole authority for nationals of Russia who are seeking entry into Guam."  *Id.*  The parole program was so rescinded and evidently has not been reinstated since.  Dkt. 11 at 2 n.1.

**B.      Factual Background**

Doe is a citizen and national of Russia currently residing in Guam.[2]  Dkt. 11 at 1; *see also* Dkt. 8 at 2.  He arrived in Guam on or about September 3, 2018 through the then-extant parole program.  Dkt. 11 at 1.  Two weeks later, on September 17, 2018, Doe filed an application for asylum with the United States Citizenship and Immigration Services ("USCIS").  *Id.* at 3.  That application is still pending.  *Id.* at 4.

Doe's parole status expired on October 17, 2018.  *Id.* at 3.  He was then automatically "restored to the status that he had at the time of parole— namely, an arriving alien seeking admission to the United States."  *Id.*  Doe was nevertheless permitted to remain in Guam—and

---

[1] DHS's decision memoranda instituting the parole program do not appear to have been published.

[2] Certain facts recounted in this section are also derived from a status report filed by Defendants. Dkt. 11.  Each of these facts is uncontested.  The Court has also considered materials from the administrative proceedings that Doe has submitted to the Court.  Dkt. 8-1.  Defendants do not dispute the authenticity of these materials, many of which will presumably be part of the administrative record once certified.

was not subject to removal proceedings—in light of his outstanding asylum application. *Id.* at 4. But Doe "does not currently hold, and has never held, lawful nonimmigrant or immigrant status in the United States, as he has never been lawfully admitted to the United States as either a nonimmigrant or immigrant." *Id.* at 1.

On November 30, 2019, at approximately 7:00–7:30 a.m., Doe attempted to board a flight from Guam to Honolulu, Hawaii. Dkt. 16 at 4 (Am. Compl.). He had "arrived at Guam Airport" earlier that morning "on time with a pre-purchased ticket for [his] flight." *Id.* Once at the airport, Doe was inspected by a CBP officer in accordance with 8 C.F.R. § 235.5(a). Dkt. 16 at 4 (Am. Compl.).[3] Doe provided the officer "all [of his] documents," namely his driver's license, social security number, employment authorization, and a statement that he had prepared. Dkt. 8 at 2; *see also* Dkt. 8-1 at 3. The officer considered the documents and then left to consult his supervisor. Dkt. 8 at 2. After the officer and supervisor finished speaking, the officer informed Doe that he would not be allowed to board his flight. *Id.* The officer then handed Doe a "[]prepared explanatory paper" detailing the reasons for his decision and escorted Doe to the exit. Dkt. 16 at 4 (Am. Compl.); *see also* Dkt. 8-1 at 5 (notice from the CBP informing Doe why he was disallowed from boarding his flight). According to Defendants, Doe "was not permitted to board the aircraft" because there was no "evidence [that Doe had] a legal basis to enter the United States." Dkt. 11 at 4. Doe disagrees.

---

[3] Section 235.5(a) states, in relevant part: "In the case of any aircraft proceeding from Guam . . . to one of the States of the United States . . . the examination of the passengers and crew required by the Act may be made prior to the departure of the aircraft, and in such event, final determination of admissibility will be made immediately prior to such departure. . . . No [] person will be permitted to depart on such aircraft until and unless he or she is found to be admissible as provided in this section."

4

C.        **Procedural Background**

Doe filed his initial complaint against the CBP on March 2, 2020. Dkt. 1 (Compl.). In it, Doe alleged that his "right to freedom of movement was violated" and that "[a]n act of discrimination based on immigration status ha[d] been committed." *Id.* at 4 (Compl.). Doe further alleged that Defendants' actions caused him "[e]motional suffering, including, but not limited to, a sense of hopelessness, doomed fate, despair, [and] fear." *Id.* at 5 (Compl.). As recompense, Doe sought declaratory relief "[r]ecogniz[ing] CBP's actions . . . as illegal and discriminatory," injunctive relief "oblig[ating] CBP to [permit Doe] unhindered admission [to his] . . . Guam-Honolulu flight at any date convenient to [Doe]," and money damages. *Id.*

Roughly one month later, Doe filed a memorandum with the Court indicating that he had attempted but failed to reach a pretrial settlement with the CBP and further explaining the factual and legal basis for his suit. Dkt. 8; Dkt. 8-1. Doe noted, for instance, that the acknowledgement of receipt that DHS sent in response to his asylum application stated: "You may remain in the U.S. until your asylum application is decided." Dkt. 8-1 at 2. Doe argues that this notice permitted him to "legally remain[] in the United States without . . . any restrictions on [him] regarding [his] freedom of movement." *Id.* at 1. Doe further explained that he had obtained a social security number, employment authorization, and a driver's license, which, in his view, demonstrated that he was "'not subject to removal under the immigration laws'" and was "'entitled[] under . . . the immigration laws . . . to enter the United States.'" *Id.* (quoting 8 C.F.R. § 235.1(f)(1) (emphasis omitted)). Finally, Doe attached to his memorandum a series of letters he had sent DHS, in which Doe (1) accused CBP Officer Nededog of "committing an act of discrimination on the basis of immigration status and/or nationality" by "not allow[ing him] to board" his flight, *id.* at 6; (2) argued that his stay in the United States had been authorized by the

5

government, *id.* at 7; (3) claimed that the CBP's refusal to let him board his flight violated his "human rights" and ran afoul of Article 12.1 of the International Covenant on Civil and Political Rights, *id.* at 9; and (4) contended that the CBP had both misread its own regulations and applied them in a manner inconsistent with the U.S. Code, *id.* at 22–23 (citing 8 C.F.R. § 235.1; 49 U.S.C. § 30301 note (Improved Security for Drivers' Licenses and Personal Identification Cards)).

Two days after Doe filed his memorandum, the Court issued a Minute Order requiring the CBP to address "whether Plaintiff has been precluded from flying from Guam to Honolulu and, if so, for what reason." Minute Order (Apr. 10, 2020). The CBP responded by providing a status report detailing Doe's immigration status and the reasons that he was precluded from flying. Dkt. 11.

Later that same month, on May 29, 2020, the CBP moved to dismiss Doe's original complaint. Dkt. 13. Because Doe was proceeding *pro se*, the Court notified him that he was "entitled to file a memorandum and supporting evidence in response" to the CBP's motion. Dkt. 14 at 1. The Court further informed Doe that if he "fail[ed] to respond to [the CBP's] motion in the time provided, the Court [could] (1) treat the motion as conceded; . . . (2) rule on [the] motion based on [the CBP's] arguments alone and without considering [Doe's] arguments; or (3) dismiss [Doe's] claims for failure to prosecute." *Id.* (citing *Bristol Petrol. Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962)). Finally, the Court noted that "if [Doe] 'files an opposition to a dispositive motion and addresses only certain arguments raised by [the CBP], a court may treat those arguments that [Doe] failed to address as conceded.'" *Id.* (quoting *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp. 3d 61, 72 (D.D.C. 2017)).

6

On June 12, 2020, Doe filed his opposition to the CBP's motion to dismiss.  Dkt. 15.  That same day, he filed an amended (now operative) complaint that was identical to his original complaint, but for the addition of the United States as a Defendant.  Dkt. 16 at 2 (Am. Compl.).  On June 23, 2020, Defendants—now the CBP and the United States—filed a motion to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(2) (for lack of personal jurisdiction), 12(b)(3) (for improper venue), and 12(b)(6) (for failure to state a claim upon which relief can be granted).  Dkt. 18.  Defendants also requested "that the Court transfer this case to the United States District Court for the District of Guam" "pursuant to 28 U.S.C. § 1404(a)."  *Id.* at 1.  Shortly thereafter, the Court once again informed Doe that he needed to respond to Defendants' motion.  Dkt. 19.  The Court also denied the CBP's earlier motion to dismiss, concluding that it was moot in light of the amended complaint.  Minute Order (June 24, 2020).

On July 15, 2020, Doe filed his opposition to Defendants' renewed motion to dismiss.  Dkt. 20.  Defendants filed their reply to Doe's opposition on July 24, 2021.  Dkt. 21.  On August 7, 2020, the Court issued a Minute Order requiring Defendants to submit a supplemental brief "addressing the impact, if any, of 28 U.S.C. [§] 1404(d), which provides that '[t]ransfers from a district court of the United States to the District Court of Guam . . . shall not be permitted under this section.'"  Minute Order (Aug. 7, 2020).  A week later, Defendants filed a response to the Court's Minute Order and stated that, "[i]n light of § 1404(d)'s prohibition on transfer to the District Court of Guam, Defendants no longer request that the Court transfer this case to the District Court of Guam pursuant to § 1404(a)."  Dkt. 22 at 1.  Defendants continued to maintain, however, that Doe's amended complaint should be dismissed in part "for lack of personal jurisdiction[ and] improper venue" under Rules 12(b)(2) and 12(b)(3), respectively, and otherwise for "failure to state a claim" under Rule 12(b)(6).  *Id.*

Defendants' motion to dismiss is now ripe for the Court's consideration.

## II.  LEGAL STANDARD

A.   **Rule 12(b)(2)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a basis for exercising personal jurisdiction over each defendant.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  To do so, the plaintiff must "make a *prima facie* showing of the pertinent jurisdictional facts," *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988), meaning that the plaintiff must "allege specific acts connecting [each] defendant with the forum," *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 87 (D.D.C. 2012).  "Mere conclusions or 'bare allegation[s]'" of jurisdiction are insufficient.  *Fawzi v. Al Jazeera Media Network*, 273 F. Supp. 3d 182, 186 (D.D.C. 2017) (alteration in original) (citation omitted).

When evaluating whether the plaintiff has met its burden, "the Court need not treat all of plaintiffs' allegations as true."  *Clay*, 907 F. Supp. 2d at 87.  Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.* (quotation marks omitted); *see also Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).  To be sure, "[w]hen deciding personal jurisdiction without an evidentiary hearing—as here—the 'court must resolve factual disputes in favor of the plaintiff.'" *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)).  That does not require the Court to "'accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts,'" however.  *Id.* (quoting same).  Ultimately, the Court must "satisfy itself that it has jurisdiction to hear the suit," and "may look beyond the allegations

of the complaint" to do so. *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 173 (D.D.C. 2016).

**B.     Rule 12(b)(3)**

Under Federal Rule of Civil Procedure 12(b)(3), a party may file a motion to dismiss for improper venue. In general, venue for a civil action is proper either in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

The plaintiff "usually bears the burden of establishing that venue is proper." *Ellis-Smith v. Sec'y of Army*, 793 F. Supp. 2d 173, 175 (D.D.C. 2011) (quotation marks omitted). To prevail on a motion to dismiss, however, a "'defendant must present facts that will defeat the plaintiff's assertion of venue.'" *Id.* (quoting *Khalil v. L–3 Commc'ns Titan Grp.*, 656 F. Supp. 2d 134, 135 (D.D.C. 2009)). In evaluating whether that burden is met, the Court must "accept[] the plaintiff's well-pled factual allegations regarding venue as true, draw[] all reasonable inferences from those allegations in the plaintiff's favor, and resolve[] any factual conflicts in the plaintiff's favor." *Jalloh v. Underwood*, 300 F. Supp. 3d 151, 154 (D.D.C. 2018) (quoting *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008)). "The Court, however, need not accept the plaintiff's legal conclusions as true, and may consider material outside the pleadings, including undisputed facts evidenced in the record, to determine whether" venue is proper. *Braun v. U.S. Dep't of the Interior*, 288 F. Supp. 3d 293, 298 (D.D.C. 2018) (quotation marks omitted).

9

Should the Court determine venue is improper, it may either dismiss the case "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Unlike transfers of venue based on "the convenience of parties and witnesses," *id* § 1404(a), the Court may transfer cases "laying venue in the wrong . . . district" to "the District Court of Guam," *id.* § 1406.

## C.   Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the allegations contained in the complaint. A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* If the complaint's allegations fail to meet this standard, the court must dismiss the action. *Id.* To be sure, complaints by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, even a *pro se* litigant must comply with the Federal Rules of Civil Procedure. *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Accordingly, "[a] *pro se* complaint, like any other, must present a claim upon which relief can be granted," as required by

Rule 12(b)(6). *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (quotation marks omitted and alteration in original)).

### III. ANALYSIS

The Court will consider each of Doe's claims in turn.

**A.    *Bivens***

The Court first addresses Doe's claim under *Bivens*, which provides a cause of action for money damages against federal agents acting under color of federal law who commit certain constitutional violations. That claim fails as a matter of law. *Bivens* applies to federal officials sued in their personal capacities and is unavailable in cases brought against the United States or "agencies of the Federal Government." *FDIC v. Meyer*, 510 U.S. 471, 486 (1994); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69–70 (2001); *Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011) (citing *Clark v. Libr. of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984)). Here, Doe names only two defendants: the CBP and the United States. Both of these Defendants, however, are cloaked in the sovereign immunity of the United States and, accordingly, neither is subject to a claim for money damages under *Bivens* and its progeny.

Defendants also argue that, read liberally, Doe's complaint might include a claim against Officer Nededog in his individual capacity and that, to the extent the complaint includes such a claim, it should be dismissed for lack of personal jurisdiction.[4] Defendants are correct that

---

[4] Doe's complaint fails to list Officer Nededog as a defendant and does not identify him (or any other CBP Officer) by name. Dkt. 16 at 2 (Am. Compl.). The complaint does, however, allege that a "U.S. CBP officer" unlawfully barred Doe from his flight. *Id.* at 4. And Doe elsewhere makes clear that Officer Nededog is the CBP Officer referenced in the complaint. *See* Dkt. 8-1 at 22 (email from Doe to DHS accusing "Officer Nededog" of "committing an act of discrimination on the basis of immigration status and/or nationality" by making the "unlawful decision not to allow [Doe] to fly"). As discussed below, however, the Court is ultimately unpersuaded at this juncture that Doe's complaint raises any claims against Doe.

Officer Nededog almost certainly lies beyond the territorial jurisdiction of this Court. The Court may exercise personal jurisdiction over non-residents of the District of Columbia only if doing so comports with the long-arm statute of the District of Columbia as well as the federal Constitution's due process requirements. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). As relevant here, the D.C. long-arm statute provides that "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13–423(a)(4) (emphasis added). Thus, a party seeking to recover in the District of Columbia for a tortious act or omission that occurred in another jurisdiction must allege (1) that the allegedly wrongful act or omission caused a "tortious injury in the District of Columbia" and (2) that the defendant has established significant ties to the District of Columbia by, for example, engaging in some "persistent course of conduct" in the jurisdiction. *Forras v. Rauf*, 812 F.3d 1102, 1106–08 (D.C. Cir. 2016); *see also Etchebarne–Bourdin v. Radice*, 982 A.2d 752, 761 (D.C. 2009). And, here, Doe fails to allege that Officer Nededog's tortious act— the refusal to let Doe board his flight to Honolulu—caused him any injury in the District of Columbia or that Officer Nededog has sufficient contacts with the District of Columbia under its long-arm statute.

   Defendants' argument, however, puts the cart before the horse. The lack of personal jurisdiction is an affirmative defense that is subject to waiver and forfeiture. *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1031–32 (D.C. Cir. 2020). The difficulty in this case is that

Officer Nededog has not been named or served, and there is no evidence before the Court that the United States Attorney's Office represents Officer Nededog in his personal capacity. As a result, the Court is unable to determine whether Officer Nededog will assert the defense—or, for that matter, whether (even if unlikely) he now lives in the District of Columbia or is present here to accept service of process. And, even beyond these difficulties, it is far from clear that Doe intends to pursue a claim against Officer Nededog. It would have been easy enough for Plaintiff to list Officer Nededog by name in the form complaint; but he did not. The only compensatory relief Doe seeks, moreover, is tied to the "recogni[tion]' that he was "a victim of illegal discriminatory actions by the CBP;" not by Officer Nededog in his personal capacity. Dkt. 16 at 6 (Am. Compl.). Finally, in responding to Defendants' Motion to Dismiss, Doe writes: "I believe that involving the CBP duty officer into a litigation . . . will not help in the process of establishing the truth." Dkt. 20 at 2. Although far from clear, Doe's statement further supports the Court's conclusion that his complaint does not raise claims against Officer Nededog.

To be sure, the time may come when Doe attempts to bring an action against Officer Nededog and effects service of process on him. But, until Doe does so, the proper resolution of his *Bivens* claim is best limited to holding that the claim is unavailable against the two, existing named defendants—the CBP and the United States.

The Court will, accordingly, grant the motion to dismiss Doe's *Bivens* claim against the two named Defendants.

**B.   The APA**

Doe's complaint might also be construed as raising a challenge either to (1) the CBP's decision to prevent him from traveling freely to Honolulu or (2) the CBP's regulations which, according to the agency, required that result but which, according to Doe, are inconsistent with

other statutory, regulatory, and international legal provisions. *Compare* Dkt. 11 at 4 (Defendants arguing that Doe "was not permitted to board the aircraft . . . pursuant to the . . . regulations set forth in 8 C.F.R. § 235.5(a)") *with* Dkt. 8-1 at 1, 9, 22–23 (Doe arguing that 8 C.F.R. § 235.5 is contradicted by his asylum application's notification receipt, Article 12.1 of the International Covenant on Civil and Political Rights, and select provisions of the U.S. Code) *and* Dkt. 15 at 4 ("CBP requires from me [Doe] a document certifying my right to enter the country despite the fact . . . that I do not and cannot have such a document.").[5]  So viewed, Doe claims arguably arise under the APA, which grants a "[r]ight of review" to all "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action, 5 U.S.C. § 702, and permits courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law . . . [,] contrary to constitutional right . . .[, or] in excess of statutory jurisdiction, authority, or limitation[]," *id.* § 706(2).

Defendants raise one, and only one response to Doe's APA claim: they contend it fails as a matter of law because Doe does not challenge final agency action. Dkt. 18-1 at 23–24.  On present record, the Court is unpersuaded.

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  Here, the Court is aware of no statute that makes the CBP's actions specifically reviewable, nor do the parties identify any such statute.  Accordingly, Doe is limited to challenging only "final agency action" of the CBP.  An agency action is deemed final if two conditions are met.  First, the action "must mark the consummation of the agency's

---

[5]  The Court need not definitively conclude whether Doe is indeed challenging the CBP's regulations given that, as explained below, the Court is persuaded that the claim, in any event, clears the hurdle of Defendants' motion to dismiss.

decisionmaking process" and "must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citation omitted). "And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (internal quotation marks omitted).

Doe challenges the CBP's decision to prevent him from boarding his flight and its standing decision not to permit him to board future flights departing Guam for the United States. The CBP's decision was memorialized in a letter that the agency provided Doe stating:

> Pursuant to 8 CFR § 212.5 at the expiration of [your parole into Guam] you [were] to be restored to the status that you had at the time of the granting of [your parole], which was as an arriving [noncitizen]. We have found no evidence that you have been granted any other status in the United States. Upon your attempt to board the flight to Honolulu[,] you underwent a pre-inspection as required under 8 CFR § 235.5. This regulation only allows persons who have been found to be admissible to the United States to depart on the flight. *Because you have not been granted any legal status in the United States[,] you were not found to be admissible, and therefore the regulations prohibit CBP from allowing you to proceed.*

Dkt. 8-1 at 5 (emphasis added); *see also* Dkt. 18-1 at 8.[6]

---

[6] Although Doe does not attach the decision to his complaint, he refers to it in the complaint, Dkt. 16, and he attached the decision to an earlier filing as well, Dkt. 8-1 at 5. Providing Doe the benefit of the doubt as a *pro se* litigant, the Court will treat the decision as incorporated into the complaint. *See Carter v. Dep't of the Navy*, No. 05-cv-775, 2006 WL 2471520, at *6 (D.D.C. Aug. 24, 2006), *aff'd*, 258 F. App'x 342 (D.C. Cir. 2007) ("[B]ecause the plaintiff is a pro se litigant whose pleadings are held to a less stringent standard than those drafted by a lawyer, the Court will read all of the plaintiff's filings together and consider his complaint in light of his reply to the motion to dismiss."); *Jones v. Kane*, No. 18-cv-612, 2020 WL 977970, at *1 (D.D.C. Feb. 28, 2020) ("The Court must liberally construe *pro se* pleadings . . . and must consider a *pro se* litigant's complaint in light of all filings, including filings responsive to a motion to dismiss[.]" (internal quotation marks and citation omitted)); *cf. Ocasio v. U.S. Dep't of Just.*, 70 F. Supp. 3d 469, 477 n.7 (D.D.C. 2014) (citing *Carter* and "read[ing] [plaintiff's] [c]omplaint together with his opposition to [the defendant's] motion"). Alternatively, the CBP's decision, Dkt. 8-1 at 5, is subject to judicial notice under Federal Rule of Evidence 201. *See Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014) ("[J]udicial notice may be taken of public records and government documents available from reliable sources."); *United States ex rel. Gardner v. Vanda Pharm., Inc.*, No. 17-cv-464, 2020 WL 2542121, at *13 (D.D.C. May 19, 2020) (taking judicial notice of approval letters issued by the Food and Drug Administration). Defendants do

This letter satisfies the requirements of final agency action, at least on the record now before the Court.  First, Defendants have not argued that the CBP's decision as memorialized in the letter was subject to appeal or further review.  Thus, at least at this juncture, the letter "mark[s] the consummation of the agency's decisionmaking process" as to Doe's admissibility.  *Bennett*, 520 U.S. at 177–78 (internal quotation marks omitted).  Second, legal consequences indisputably flowed from that decision—Doe was and is, as a matter of law, prohibited from traveling to the United States from Guam.

Defendants argue that the CBP's preventing Doe from traveling is not final agency action for one reason:  Doe has a pending asylum application.  Dkt. 18-1 at 24; Dkt. 21 at 5.  But Defendants cite no authority for the proposition that the pendency of an asylum petition renders an agency's distinct determination of inadmissibility nonfinal.  To be sure, a grant of asylum would entitle Doe to enter the United States.  But the Court does not understand Doe's claim to turn on whether his asylum application should be granted.  To the contrary, Doe appears to maintain that he was previously granted a legal right to enter the United States while his asylum petition is under consideration and that the CBP's decision that he is not entitled to enter the United States violated that previously bestowed right.  Even if that claim is likely to face substantial difficulties on the merits, Doe is, as the Plaintiff, entitled to define his claim, and the claim that he asserts seems to challenge a final agency action.

Defendants' final agency action argument fails for other reasons, too.  Defendants decline to discuss (or even to cite) *Bennett*.  They do not explain why Doe's challenge to the CBP's decision to deny him entry is premature.  Nor do they address whether Doe is challenging—or

---

not question the authenticity of the document or its status as an official government record that will form part of the administrative record in this action.  To the contrary, they affirmatively rely on and quote from the document themselves.  Dkt. 18-1 at 9–10.

should be deemed to be challenging—the lawfulness of the CBP's regulations, which are themselves final agency action justiciable under the APA. *See Broadgate Inc. v. USCIS*, 730 F. Supp. 2d 240, 243 (D.D.C. 2010) ("Legislative or substantive rules are, by definition, final agency action."). For that reason, the Court cannot conclude—on the present record—that Defendants have met their burden of demonstrating that Doe is not challenging final agency action. They may well eventually do so. But resolution of that question will need to await the certification of the agency record and a motion for summary judgment.

Finally, it may be the case that Defendants' decision to prevent Doe from flying was consistent with the INA, the APA, and other applicable law.[7] But Defendants have not argued as much. They focus only on whether Doe challenged final agency action. And for the reasons stated, he has.

Defendants' motion to dismiss Doe's APA claim is accordingly denied.

## CONCLUSION

For the reasons stated, it is hereby **ORDERED** that Defendants' motion to dismiss, Dkt. 18, is **GRANTED** in part and **DENIED** in part; it is further

**ORDERED** that Doe's *Bivens* claim against the CBP and the United States is **DISMISSED**; it is further

**ORDERED** that Defendants' motion to dismiss Doe's APA claim is **DENIED**; and it is further

---

[7] As far as the Court can discern, the channeling rules of the Immigration and Nationality Act do not apply in this action. *See* 8 U.S.C. § 1252(a)(2)(B). Because those rules speak to the Court's jurisdiction, however, and because the application of those rules turns on how Doe's claim is understood, the parties shall promptly inform the Court if they currently, or at some subsequent stage of the proceeding, believe that the Court's jurisdiction is subject to reasonable dispute.

**ORDERED** that each party shall file a notice with the Court, on or before April 16, 2021, proposing next steps in this proceeding.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 16, 2021